IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: * | |
| * | |
| FIRSTPAY, INC. * | Case No. 03-30102-PM |
| * | (Chapter 7) |
| Debtor * | |

**********************************************************************

| | |
|---|---|
| MICHAEL G. WOLFF, TRUSTEE * | |
| 11300 Rockville Pike | |
| Suite 408 * | |
| Rockville, Maryland 20852 | |
| * | |
| Plaintiff, | |
| * | |
| vs. | Adversary No. 05-_____-PM |
| * | |
| UNITED STATES OF AMERICA | |
| * | |
| Serve: United States Attorney for | |
|     the District of Maryland * | |
|     Attn: Civil Process Clerk | |
|     6625 U.S. Court House * | |
|     101 West Lombard Street | |
|     Baltimore, Maryland 21201-2692 * | |
| | |
| and * | |
| | |
| Serve: Attorney General of the United States * | |
|     Department of Justice | |
|     Room B-103 * | |
|     950 Pennsylvania Avenue, N.W. | |
|     Washington, D.C. 20530-0001 * | |
| | |
| and * | |

1

Serve:  Internal Revenue Service         \*
       c/o T. Keith Fogg, Esq.
       Main Street Centre, Suite 1601     \*
       600 East Main Street
       Richmond, Virginia 23219-2430     \*

           Defendant           \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL PAYMENTS AND/OR FRAUDULENT CONVEYANCES AND REQUEST FOR DECLARATORY JUDGMENT

MICHAEL G. WOLFF ("Plaintiff"), the Chapter 7 Trustee for the Bankruptcy Estate of Firstpay, Inc. (the "Debtor"), by JEFFREY M. ORENSTEIN and GOREN, WOLFF & ORENSTEIN, LLC, pursuant to 11 U.S.C. §§544, 547, 548 and 550 seeks monetary damages against the United States of America ("Defendant"). In addition, and pursuant to 28 U.S.C. §§ 2201, et. seq. Plaintiff files this Complaint seeking declaratory relief against the United States of America. For his Complaint, Plaintiff states as follows:

### JURISDICTION

1.    This is an adversary proceeding brought pursuant to Rule 7001 of the Bankruptcy Rules.

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 2201, et. seq. and 157, 11 U.S.C. §§ 547, 548 and 550 and Rule 7001 of the Bankruptcy Rules.

3.    This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157.

## THE PARTIES

4.      The United States of America is named as a defendant, herein, as the recipient of funds of the Debtor and as the party whose acts have caused and/or contributed to the largest number of claims against the Debtor's estate.

5.      On or May 16, 2003 (the "Petition Date"), an Involuntary Bankruptcy Petition was filed against the Debtor.

6.      Thereafter, Plaintiff was appointed as the Chapter 7 Trustee of the Debtor's Estate and continues to serve in that capacity.

7.      An Order for Relief was entered in this case on June 25, 2003.

## GENERAL FACTUAL BACKGROUND

8.      The Debtor was managed and controlled by Mark Rothman ("Rothman"), a resident of Montgomery County, Maryland, who is reported to have died in the British Virgin Islands in March of 2003.

9.      The Debtor operated a business or businesses in Burtonsville, Maryland that traded under the "umbrella" of FirstGroup.

10.      The primary business of the Debtor was the operation of a payroll service, similar in nature to those operated by established companies such as ADP.[1]

11.      Following Mr. Rothman's death, it became widely known that the Debtor, while collecting money from its clients, had failed to pay over a large part of the money to the

---

[1]      By using the name of ADP, Movant does not mean to suggest that there is any relationship between the Debtor and ADP and further does not mean to suggest that the method of operations of the two companies is in any way similar. Rather, ADP is a recognized name in the industry much like Xeorox has become synonymous with copying and Kleenex with tissues.

3

governmental agencies to whom the Debtor had contractually promised the funds would be paid (i.e. Defendant, Comptroller of the Treasury, D.C. Treasurer, Virginia Employment Commission, and others).

12. As a result of these failures, a criminal investigation and a civil bankruptcy fraud investigation was undertaken.

13. As a result of the investigations, it was determined that most, if not all of the Debtor's clients had paid their tax obligations over to the Debtor, but that the Debtor did not forward those payments to Defendant.

FACTUAL BACKGROUND RELATING TO DECLARATORY JUDGMENT

14. As a result of those failures, and notwithstanding the general recognition that the Debtor's clients paid the taxes to the Debtor, the Defendant has continued to pursue collection of those same amounts from the Debtor's clients.

15. Upon information and belief, even where the Defendant has evidence that the amounts were paid by the client to the Debtor, the Defendant has agreed to waive penalties and/or interest, but has continued to pursue collection against the client, at least for the tax portion of the obligation.

16. Based upon these continued collection efforts, and in some cases second payments by the clients, the clients have filed Proofs of Claim against the Debtor's estate and will continue to file claims that will aggregate well into the millions of dollars.

17. In general, the clients have complained that they continued to make tax payments to the Debtor rather than directly to the Defendant, because the Defendant never notified them that their payments had not been received.

4

18. Based upon federal statutes and regulations, such notices are required to be sent to the taxpayers at their last known addresses.

19. Notwithstanding these statutes and regulations, the Defendant did not send the notices to the taxpayer/clients.

20. Plaintiff's investigation has led to the discovery that notices were not sent to the taxpayer/clients as required, but rather, were sent directly to the Debtor without authorization of the taxpayer/clients.

21. It was this act by the Defendant that allowed the Debtor to perpetrate its fraud against its clients and the creditors of this bankruptcy estate.

22. Had the Defendant not changed the address to which notices were sent, the taxpayer/clients would have recognized that their payments were not being received, would have investigated why their payments were not being received, would have uncovered the Debtor's fraudulent acts, and would have made payments directly to the Defendant thus saving themselves and others from the fraud that was committed.

23. By changing the address of the taxpayer/clients without the authorization of the taxpayer/clients, and by sending the notices to the Debtor rather than the taxpayer/clients, the Defendant, implicitly, if not explicitly, authorized the Debtor to act as its collection agent and became responsible for the misfeasance or malfeasance of the Debtor.

COUNT I
<u>Declaratory Judgment</u>

24. The allegations set forth in paragraphs 1 through 23 of this Complaint are incorporated herein by reference.

25. An actual controversy exists among the parties.

26. The creditors of the Debtor's estate generally claim that they already paid their taxes by making payments to the Debtor, that prior to the Debtor's bankruptcy they never received notification that their taxes were not remitted to the Defendant, that had they known their taxes had not been remitted to the Defendant, they would have made payments directly to the Defendant, that since they made the payments once, they should not have to make the payments a second time, and that to the extent they are being required to pay again, they have claims against the Debtor's estate for those continuing obligations and/or second payments.

27. Defendant claims that it never received the tax payments and, as a result, the taxpayer/clients remain liable for the payments.

28. Plaintiff claims that since Defendant changed the taxpayer/client addresses without authorization from the taxpayers/clients and since, by doing so, it allowed the Debtor to perpetrate its fraudulent scheme, Defendant effectively agreed to let the Debtor serve as its collection agent and took the risk upon itself that the payments would not be remitted and, in so doing, waived the right to make any claims against the taxpayers/clients who had actually remitted their payments to the Debtor.

29. A declaratory judgment will resolve the uncertainties of the parties with respect to the various obligations of the parties and will likely relieve the innocent taxpayer/clients of any further obligation on account of payments they had already made once.

30. By receiving such a declaratory judgment, the claims against the Debtor's estate will be reduced and legitimate and necessary claims of the estate will receive greater distributions and/or will be paid in full.

31. Plaintiff is entitled to a declaratory judgment pursuant to the Declaratory Judgment Act 28 U.S.C. §§ 2201, et. seq., finding that the Defendant has and had no claims against the Debtor's clients who made tax payments to the Debtor, whose payments were not remitted to the Defendant, and who did not receive notice of the lack of payment due to the unauthorized change of address by the Defendant.

WHEREFORE, Plaintiff demands the following relief:

A. That this Court declare, adjudge, and decree Defendant has and had no claims against the Debtor's clients who made tax payments to the Debtor, whose payments were not remitted to the Defendant, and who did not receive notice of the lack of payment due to the unauthorized change of address by the Defendant; and

B. For such other and further relief as the nature of this cause may require.

## FACTS RELATING TO AVOIDANCE ACTIONS

32. During the three years immediately preceding the filing of the Involuntary Petition against the Debtor, the Debtor made certain payments to the Defendant from funds that were commingled in the Debtor's accounts.

33. Despite Plaintiff's request for information, Defendant has failed to provide Plaintiff with detailed information regarding the regularity or magnitude of the payments.

34. Defendant has generally refused to make this information available to Plaintiff on the theory that the information relates to the taxpayer information of the individual taxpayer/clients and, for that reason, cannot be provided to Plaintiff.

35. While Plaintiff has not been able to compile specific information regarding all payments, a review of the available bank records of the Debtor reflects that, during the period

7

from February 15, 2003 through and including May 16, 2003, the Debtor made payments to the Defendant totaling no less than $28,110,212.07.

36. Projecting those numbers out, Plaintiff reasonably believes that the sum of more than $112,000,000.00 was paid by the Debtor to the Defendant during the one year immediately preceding the Petition Date on account of tax obligations that were not the Debtor's obligations.

37. Projecting those numbers out, Plaintiff reasonably believes that the sum of more than $336,000,000.00 was paid by the Debtor to the Defendant during the three years immediately preceding the Petition Date on account of tax obligations that were not the Debtor's obligations.

COUNT II
Avoidance of Preferential Transfers (11 U.S.C. §547)

38. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

39. The payments made by the Debtor to the Defendant within the 90 days immediately preceding the Petition Date (the "90 Day Payments") were transfers within the meaning of 11 U.S.C. § 101(54).

40. The 90 Day Payments were made to or for the benefit of the Defendant.

41. To the extent that the Debtor had an obligation to pay the sums over to the Defendant, Defendant was a creditor of the Debtor.

42. The 90 Day Payments were made for or on account of antecedent debts owed by the Debtor to the Defendant before the 90 Day Payments were made.

43. The 90 Day Payments were each made while the Debtor was insolvent.

44. The 90 Day Payments were made within 90 days before the Petition Date.

45. The 90 Day Payments to Defendant enabled the Defendant to receive more than it would have otherwise received if the Debtor's bankruptcy case were a case under Chapter 7, the 90 Day Payments had not been made, and Defendant had only received payment on account of its unsecured pre-petition debt in accordance with the United States Bankruptcy Code.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against Defendant avoiding the 90 Day Payments; and

B. For such other and further relief as the nature of this cause may require.

## COUNT III

### Avoidance of One Year Preferential Transfers (11 U.S.C. §547)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47. As a result of its wrongful acts, Defendant caused itself to become an insider of the Debtor.

48. The payments made by the Debtor to the Defendant within the one year immediately preceding the Petition Date (the "365 Day Payments") were transfers within the meaning of 11 U.S.C. § 101(54).

49. The 365 Day Payments were made to or for the benefit of the Defendant.

50. To the extent that the Debtor had an obligation to pay the sums over to the Defendant, Defendant was a creditor of the Debtor.

51. The 365 Day Payments were made for or on account of antecedent debts owed by the Debtor to the Defendant before the 365 Day Payments were made.

52. The 365 Day Payments were each made while the Debtor was insolvent.

53. The 365 Day Payments were made within one year before the Petition Date.

54. The 365 Day Payments to Defendant enabled the Defendant to receive more than it would have otherwise received if the Debtor's bankruptcy case were a case under Chapter 7, the 365 Day Payments had not been made, and Defendant had only received payment on account of its unsecured pre-petition debt in accordance with the United States Bankruptcy Code.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against Defendant avoiding the 365 Day Payments; and

B. For such other and further relief as the nature of this cause may require.

COUNT IV

Avoidance of Fraudulent Conveyance (11 U.S.C. §548)

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 54 as if fully set forth herein.

56. The 365 Day payments were a transfer within the meaning of 11 U.S.C. § 101(54).

57. The funds transferred were property of the Debtor that, but for the transfer, would have been property of the Debtor's bankruptcy estate.

58. The 365 Day Payments were made within one year of the Petition Date.

59. At the time of the 365 Day Payments, the Debtor was not indebted to Defendant.

60. The Debtor received no consideration in exchange for the 365 day Payments.

61. The Debtor was insolvent on each date that one of the 365 Day Payments was made.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against Defendant avoiding the 365 Day Payments; and

B. For such other and further relief as the nature of this cause may require.

COUNT V
FRAUDULENT CONVEYANCE
(Md. Code Ann., Com. Law § 15-204)

62. The allegations set forth in paragraphs 1 through 61 of this Complaint are incorporated herein by reference.

63. The payments made by the Debtor to the Defendant within the three years immediately preceding the Petition Date (the "Transfers") were conveyances within the meaning of § 15-201(c) of the Commercial Law Article of the Maryland Annotated Code.

64. The Transfers included, but were not limited to payments that the Debtor made to Defendant on account of the personal tax obligations of Mark and Carol Rothman, as well as the payments that the Debtor made to Defendant from its general fund on account of tax obligations of parties other than the Debtor.

65. The Transfers were made at a time when the Debtor was insolvent or the Transfers rendered the Debtor insolvent within the meaning of § 15-202 of the Commercial Law Article of the Maryland Annotated Code.

66. The Transfers were made without fair consideration within the meaning of § 15-203 of the Commercial Law Article of the Maryland Annotated Code.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment avoiding the Transfers received within three years of the filing of the bankruptcy case; and

B. For such other and further relief as the nature of this cause may require.

COUNT VI
FRAUDULENT CONVEYANCE
(Md. Code Ann., Com. Law § 15-205)

67. The allegations set forth in paragraphs 1 through 66 of this Complaint are incorporated herein by reference.

68. At the time of the Transfers, the Debtor was engaged in business.

69. After the Transfers, an unreasonably small amount of capital remained in the hands of the Debtor.

70. The Transfers by the Debtor to Defendant were fraudulent conveyances within the meaning of § 15-205 of the Commercial Law Article of the Annotated Code of Maryland as to creditors and other persons who became creditors during the continuance of the Debtor's businesses.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment avoiding the Transfers received within three years of the filing of the bankruptcy case; and

B. For such other and further relief as the nature of this cause may require.

## COUNT VII
## FRAUDULENT CONVEYANCE
### (Md. Code Ann., Com. Law § 15-206)

71. The allegations set forth in paragraphs 1 through 70 of this Complaint are incorporated herein by reference.

72. The Transfers by the Debtor to Defendant, were fraudulent conveyances as to both present and future creditors within the meaning of § 15-206 of the Commercial Law Article of the Annotated Code of Maryland since, regardless of the knowledge or intentions of the Defendant, the Debtor intended and/or believed that it would incur debts beyond its ability to pay those debts as those debts matured.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment avoiding the Transfers received within three years of the filing of the bankruptcy case; and

B. For such other and further relief as the nature of this cause may require.

## COUNT VIII
## FRAUDULENT CONVEYANCE
### (Md. Code Ann., Com. Law § 15-207)

73. The allegations set forth in paragraphs 1 through 72 of this Complaint are incorporated herein by reference.

74. The Transfers by the Debtor to Defendant were fraudulent conveyances as to both present and future creditors within the meaning of § 15-207 of the Commercial Law Article of the Annotated Code of Maryland since the Transfers were made by the Debtor with the actual intent to hinder, delay or defraud the Debtor's present or future creditors.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment avoiding the Transfers received within three years of the filing of the bankruptcy case; and

B. For such other and further relief as the nature of this cause may require.

## COUNT IX
### Turnover of Avoided Preferential Payments or Fraudulent Conveyance (11 U.S.C. § 550)

75. Plaintiff realleges and incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. Defendant was the initial transferees of the 90 Day Payments, the One Year Payments and the Transfers.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against Defendant and in favor of Plaintiff in the amount of no less than $336,000,000.00 plus all other amounts received by Defendant from the Debtor during the three year Period preceding the filing of the bankruptcy case, plus interest at the applicable federal rate from the date of each of the Transfers; and

B. For such other and further relief as the nature of this cause may require.

Respectfully submitted,

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Goren, Wolff & Orenstein, LLC
One Central Plaza
11300 Rockville Pike, Suite 408
Rockville, Maryland  20852
(301) 984-6266
Attorneys for Michael G. Wolff, Chapter 7 Trustee